IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY L. W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 50281 |
| v. | ) | |
| | ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting | ) | Iain D. Johnston |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Kimberly L.W. ("Plaintiff") claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's memorandum, which this Court will construe as a motion for summary judgment, (Dkt. 12), is **granted** and the Commissioner's memorandum, which this Court will construe as a cross-motion for summary judgment, (Dkt. 17) is **denied.**

### I. BACKGROUND

**A. Procedural History**

Plaintiff filed her application on June 16, 2014, alleging disability beginning on May 20, 2014. R. 187-188. Plaintiff's application was denied initially and on reconsideration. *Id*. at 78-90, 92-104. On May 13, 2016, Plaintiff, represented by an attorney, testified at a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 40-77. The ALJ also heard testimony from James Radke, a vocational expert ("VE"). *Id*.

1

Plaintiff was 55 years old at the time of the hearing. She testified that she was divorced and lived on her own in a single level apartment. R. 48-49. Plaintiff testified that she stopped working as a VA coordinator at a university in May of 2014 due to her postural orthostatic tachycardia syndrome ("POTS")[1] and the stress of her job. *Id.* at 47-48. She testified that her doctor felt that due to her impairments and the stress of her job, it would benefit her to attempt to get disability benefits. *Id.* Plaintiff stated she has not attempted to find work since May of 2014, and that she was supporting herself with her divorce settlement. *Id*. at 48. Plaintiff believed that she could not work due to her POTS, which dehydrates her body. *Id.* at 54. Plaintiff stated that moving from lying down or sitting to standing causes her POTS symptoms. *Id.* She stated that she gets IV fluids every three months to help with her dehydration. *Id.* Plaintiff testified that her dehydration causes chronic fatigue, weakness, and brain fog that causes her to spend significant amounts of time in bed. *Id.* She testified to taking frequent naps. *Id.* at 55.

Plaintiff stated that she does yoga stretches to alleviate her fibromyalgia and bulging disc symptoms. R. 55-56. She testified that she spends her days attempting to do housework in the morning, resting in the afternoon, visiting her elderly parents, and then going to bed by 9:00 pm. *Id.* Plaintiff stated that she is able to drive, but does not have any social activities that she is involved in. *Id.* When asked how long she could sit, Plaintiff testified that she could sit for about an hour before she needed to move to alleviate her fibromyalgia and back symptoms. *Id.* She stated that no doctor has limited how much she can lift, but that she feels she could only lift ten pounds. *Id.* at 57. Plaintiff reported that she takes Flexeril for her fibromyalgia, and that she has severe arthritis in her right hand. *Id.* at 59. The arthritis causes constant pain and restrictions on

---

[1] Postural Orthostatic Tachycardic Syndrome (POTS) is a condition that affects circulations (blow flow). POTS is a form of orthostatic intolerance, the development of symptoms that come on when standing from a reclining position, that may be relieved by sitting or lying back down.
https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots

typing and writing. *Id.* Plaintiff also testified that she has been positively diagnosed with Huntington's Disease, although she currently does not have any symptoms. *Id.* at 59-60. Plaintiff testified to having difficulty reaching overhead and numbness in her fingers. *Id.* at 61. She also testified to difficulty with balance due to her dehydration and weakness. *Id.* at 62. Further, heat and humidity aggravate her POTS symptoms, and the cold aggravates her arthritis symptoms. *Id.*

An impartial VE, James Radke, also testified at the hearing. R. 63. The ALJ asked the VE to consider a hypothetical individual of Plaintiff's background who was limited to light work but could not climb ladders, ropes or scaffolds; could occasionally balance, stoop, crouch, kneel, and crawl; and should avoid all exposure to use of moving machinery and all exposure to unprotected heights. *Id.* at 66. The VE testified that such an individual could perform all of Plaintiff's past relevant work according to the DOT, but she could not perform past work as a retail manager or retail sales as she performed it. *Id.* The ALJ then asked the VE to keep the same hypothetical, but to add the limitation of a low-stress job with only occasional decision making, occasional changes in the work place, and semi-skilled or below. *Id.* The VE stated that such an individual could perform Plaintiff's past relevant work of retail sales according to the DOT, as well as title clerk and inventory both according to the DOT and as actually performed. *Id.* at 66-67. The VE stated that such an individual could also perform work as a customer service representative, a receptionist, or a cashier. *Id.* at 67. The ALJ then asked the VE to go back to the original hypothetical but limit the individual to sedentary work. *Id.* at 68. The VE stated that such an individual could perform Plaintiff's past relevant work as a student advisor, auto title clerk, and inventory clerk. *Id.* The ALJ then asked the VE to add the limitation of a low-stress job with only occasional decision making, occasional changes in the work place, and semi-skilled or below. *Id.* The VE testified that such an individual could perform Plaintiff's past work of title clerk or

inventory clerk. *Id.* The VE testified that such an individual could also perform work as a mail clerk, cleaner, or cashier. *Id.* at 70.

On November 1, 2016 the ALJ issued a written decision finding that Plaintiff was not disabled. R. 16-39. On July 11, 2017, Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. R. 1-7. This action followed.

**B. ALJ Decision**

On November 1, 2016, the ALJ issued an unfavorable decision. R. 18-32. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. 21. At step two, the ALJ found Plaintiff suffered from the severe impairments of fibromyalgia, postural orthostatic tachycardia syndrome (POTS), arthritis of the right hand, and affective disorder. *Id*. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526). *Id.* at 22. The ALJ then found that Plaintiff had no restrictions in her activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation. *Id.* at 23-24.

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at a sedentary exertional level as defined in 20 C.F.R. 404.1567(a), except for the following limitations: she could not climb ladders, ropes or scaffolds; she could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; she could occasionally reach overhead, as well as frequently handle and finger with the dominant arm. She should avoid concentrated exposure to extreme heat or humidity and workplace hazards, such as

use of moving machinery and unprotected heights. She is further limited to low stress work, defined as occasional decision-making and occasional changes in the work setting. R. 24. At step four, the ALJ concluded that Plaintiff was capable of performing her past relevant work as an automotive title clerk/inventory clerk. *Id*. at 30. The ALJ also found that Plaintiff could perform work as a receptionist or reservation clerk. *Id.* at 32. Because Plaintiff could perform past relevant work, the ALJ did not have to continue on to step five. Based on this determination, the ALJ found that Plaintiff was not disabled under the Act. *Id*. at 33.

## II. DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts

cannot build the logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014).

On appeal, Plaintiff argues that reversal or remand is appropriate for two reasons. First, Plaintiff argues that the ALJ failed to properly apply the treating physician rule[2] for three opinions given by Plaintiff's primary care physician. Second, Plaintiff alleges that the ALJ's RFC is unsupported by substantial evidence and fails to account for Plaintiff's fatigue.

**A. Treating Physician Rule**

Plaintiff argues that the ALJ failed to properly apply the treating-physician rule in analyzing three separate opinions from Plaintiff's treating physician, Dr. Suheil Barakat, M.D. Dr. Barakat issued three medical opinions for Plaintiff, one in 2011, one in 2014, and one in 2016. R. 469, 562, 664-665. In April of 2011, Dr. Barakat wrote an opinion letter stating that Plaintiff had a medical condition which caused extreme fatigue. *Id.* at 469. He further opined that Plaintiff could not work more than four days per week. *Id.* In December of 2014, Dr. Barakat issued a second opinion letter, stating that Plaintiff was diagnosed with POTS. *Id.* at 562. He opined that she chronically feels tired and weak and needs to rest during the day. *Id.* He further opined that she experienced symptoms including dizziness, fainting, headache, sweaty, shakiness, nausea, poor concentration, memory problems, sense of anxiety, and chest pain made worse by standing due to her POTS, and that these symptoms "interfere with her performance and make her duties inefficient." *Id.*

---

[2] The Court recognizes that this rule is more accurately termed the "treating-sources rule," but will use the more familiar "treating-physician rule" terminology. For a thorough discussion of the treating-physician rule, *see* Johnston, *Every Picture Tells a Story: A Visual Guide to Evaluating Opinion Evidence in Social Security Appeals*, The Circuit Rider, 28 (April 2016); Johnston, *Understanding the Treating Physician Rule in the Seventh Circuit: Good Luck!*, The Circuit Rider, 29 (November 2015). The regulation establishing this rule was amended on January 18, 2017, and became effective on March 27, 2017. https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html. Good riddance!

In March of 2016, Dr. Barakat completed a physical medical source statement. R. 664-665. In this medical source statement, Dr. Barakat opined that Plaintiff's POTS symptoms were severe enough to frequently interfere with her ability to perform simple work-related tasks. *Id.* He opined that Plaintiff would need to recline or lie down during a typical work day outside of the normal breaks. *Id.* He further opined that she could only sit for a total of one hour during an eight hour work day, and that she could not stand/walk for even an hour in an eight hour day. *Id.* Dr. Barakat then opined that Plaintiff would need unscheduled thirty minute breaks daily. *Id.* He further opined that she could frequently lift or carry less than ten pounds, but she could only occasionally lift or carry ten pounds and could never lift or carry anything heavier. *Id.* Dr. Barakat next opined that Plaintiff could only use her hands for 12% of the workday, her fingers for 24% of the workday, and reach overhead 36% of the workday. *Id.* Finally, he opined that she would miss more than four days a month. *Id.* at 665.

Plaintiff asserts that the ALJ erred applying the treating-physician rule for all three opinions from Dr. Barakat. Specifically, Plaintiff contends that the ALJ failed to properly follow the two step process for deciding what weight to afford a treating physician, and that the ALJ failed to discuss the checklist of factors as listed in 20 C.F.R. § 404.1527(c).

Plaintiff is generally correct. Remand is required. The ALJ conflated the entire process into a few sentences that only addressed a brief amalgam of consistency and supportability. R. 27. And even that discussion was based on cherry-picked evidence that failed to address considerable contrary evidence.

As an initial matter, the ALJ properly gave Dr. Barkat's initial 2011 opinion limited weight. R. at 26. Dr. Barakat stated in his 2011 opinion letter that Plaintiff would be unable to work more than four days a week due to her fatigue. *Id.* at 26, 273. However, Plaintiff continued

7

to work at a substantial gainful activity level for three years following the date of Dr. Barakat's letter. *Id.* at 26. The ALJ properly gave Dr. Barakat's opinion limited weight, as Plaintiff continued to sustain full time work following Dr. Barakat's opinion that she could not sustain full time work. Dr. Barakat's opinion does not match the reality of Plaintiff's situation, and the ALJ properly gave this opinion limited weight.

Further, Dr. Barakat's 2014 opinion letter did not contain any functional limitations, and therefore it was not a "medical opinion" under the social security regulations. R. at 562; 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). The 2014 opinion only stated that Plaintiff suffered from POTS, which resulted in a variety of symptoms. R. at 562. Dr. Barakat then opined that Plaintiff had "most of these symptoms which interfere with her performance and make her duties inefficient." *Id.* This opinion listed nothing more than a diagnosis and symptoms, but offered no insight into functional limitations, severity, or prognosis, and therefore is not a medical opinion under the regulations. The ALJ does not have to assess the weight of a letter that does not meet the criteria to be a medical opinion. A list of symptoms and a statement that Plaintiff has "most" of the symptoms, without any discussion of the limitations Plaintiff has due to those symptoms, is not considered a medical opinion.

The 2016 opinion is the only opinion by Dr. Barakat, therefore, that warrants review. Plaintiff contends that the ALJ erred in analyzing Dr. Barakat's opinion by failing to follow the two step treating-physician rule as laid out by this Court in *Booth v. Colvin*, 2016 U.S. Dist. LEXIS 82754 at *8-9 (N.D. Ill. 2016). In *Booth*, this Court found that the ALJ erred by failing to

support a two step process in analyzing the opinion of a treating physician. First, a treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and if it is "not inconsistent with the other substantial evidence in [the] case." 20 C.F.R. § 404.1527(c). If the ALJ determines that the opinion is not entitled to controlling weight, the ALJ must proceed to the second step and use a checklist of factors to determine what weight it should be given. *Moss v. Astrue,* 555 F.3d 556, 562 (7th Cir. 2009). Plaintiff asserts that the ALJ failed to complete the first step of the treating physician rule, which requires its own analysis.

The two step-process is clear: first, the ALJ must determine whether the opinion deserves controlling weight (which is decided by whether it is supported by the record); and second, the ALJ must discuss and analyze the checklist in 20 C.F.R. § 404.1527(c). In *Booth,* the ALJ's only analysis stated that "[t]his evidence is inconsistent with [the doctor's] finding that the claimant was poor or marked in every area of functioning. Therefore, the undersigned gives no weight to [his] opinion." *Booth,* 2016 U.S. Dist. LEXIS 82754 at *12. This Court found that the ALJ's two sentences regarding an opinion did not constitute an "explicit analysis of either the two parts to Step One, or the six checklist factors required by Step Two." *Id.* at *13. In the present case, the ALJ provides an analysis that does offer an explicit analysis at Step One. However, the Court finds that the ALJ impermissibly cherry-picked evidence at Step One, and she erred in failing to provide a proper analysis at Step Two.

The first portion of Step One requires the ALJ to decide whether or not the opinion warrants controlling weight. 20 C.F.R. § 404.1527(c). Here, the ALJ explicitly stated that he gave Dr. Barakat's 2016 opinion "partial, but not controlling weight." R. at 27. The ALJ then went through the second portion of Step One, which requires that the ALJ discuss whether the

9

opinion is well supported by the medical evidence and not inconsistent with the other substantial evidence in the case. 20 C.F.R. § 404.1527(c). In this case, the ALJ first found that the opinion was "unsupported by the record as a whole" and "inconsistent with contemporaneous treatment notes." R. at 27. The ALJ then cites to multiple exhibits, finding that Dr. Barakat's treatment notes do not document the severe limitations he gives in his opinion, and, to the contrary, show that Plaintiff's impairments were stable and controlled with medication. *Id.* The ALJ also points to Plaintiff's own statements, finding that Plaintiff did not claim limitations as severe as those set forth by Dr. Barakat. *Id.* This is an explicit analysis at Step One. However, the analysis itself is flawed. While the ALJ points to a treatment note from Dr. Barakat that indicates Plaintiff's POTS and depression/anxiety were stable and controlled with medication, other treatment notes indicate continued symptoms from her POTS. Plaintiff continued to report feeling weak and tired, and Dr. Barakat found her to be dehydrated and requiring IV fluids. R. 567, 573, 575, 579-80. 582, 585-86. Plaintiff also continued to report pain and joint stiffness. *Id.* at 569. Dr. Barakat also found in July of 2014, that even after Plaintiff stopped working, she continued to require IV fluids "every month or [two]." *Id.* at 586. Dr. Barakat also noted that the IV fluids offered Plaintiff only temporary relief, and that Plaintiff would end up feeling weak and tired due to her POTS as time wore on. *Id.* Dr. Barakat also opined that Plaintiff would be unable to perform the duties of her regular occupation at that time. *Id.* The ALJ impermissibly chose one treatment note to discredit Dr. Barakat's opinion without discussing the large number of treatment notes that were consistent with the opinion. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability

finding." (citing *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009)). Therefore, the ALJ erred at Step One in determining whether Dr. Barakat's opinion deserved controlling weight.

The ALJ further erred in her Step Two analysis. Step Two of the treating physician rule requires the ALJ to look to a list of factors to determine what weight to give an opinion. That list of factors includes the following: examining relationship, treatment relationship (length and nature of treatment relationship and frequency of examination, along with nature and extent of the treatment relationship), supportability, consistency, specialization, and other factors. 20 C.F.R. § 404.1527(c). It is clear that the ALJ did not explicitly consider the checklist factors in 20 C.F.R. § 404.1527(c). This Court takes the view that an explicit analysis of the checklist is required under the treating physician's rule. *See Duran v. Colvin*, 2015 U.S. Dist. LEXIS 101352, *8-9 (N.D. Ill. Aug. 4, 2015). The ALJ failed to analyze a number of the factors required by 20 C.F.R. § 404.1527(c). Specifically, the ALJ failed to analyze the examining relationship, treatment relationship, and specialization, which are critical. The ALJ's decision does not explicitly or even implicitly discuss these factors at Step Two of the treating physician rule, and many of those factors favor Dr. Barakat.

Dr. Barakat was Plaintiff's primary care physician. R. 26-27. Dr. Barakat and Plaintiff's relationship spanned at least 5 years, with opinions from 2011, 2014, and 2016. *Id.* at 273, 562, 664-65. Although the Court did not add up the number times Plaintiff was seen by Dr. Barakat, the Court notes that Plaintiff was seen regularly from 2013 through 2016. *Id.* at 430-33, 524, 527, 654. The ALJ does not discuss the long treatment relationship between Plaintiff and Dr. Barakat, which weighs in Dr. Barakat's favor when discussing how much weight to give his opinion. And while the ALJ does discuss whether Dr. Barakat's opinion is supported by the record, the ALJ fails to discuss the consistency of Dr. Barakat's opinion with other opinions and

11

treatment notes in the record, and impermissibly cherry picks only the evidence that discredits Dr. Barakat's opinion. *Denton,* 596 F.3d at 425.

Dr. Barakat's opinion is consistent with treatment notes from other sources in the record. Dr. Sunita Penmatcha, M.D., found that Plaintiff suffered from fibromyalgia, progressive diffuse pain in her neck and upper arms, shoulder/neck and hip pain caused by prolonged sitting with use of phones at work, osteoarthritis in her hands, moderate and mild joint pain, and dry eyes and dry mouth. R. 378. An x-ray in 2016 showed advanced osteoarthritic changes in Plaintiff's right hand, along with deformity in her trapezium and trapezoid bones. *Id.* at 636. This evidence is consistent with Dr. Barakat's opinion regarding Plaintiff's fingering limitations. Plaintiff's Chiropractor, Dr. Trevor Tennant, D.C., stated that Plaintiff suffered from degenerative disc disease and degenerative joint disease, which he treated with electrical stimulation in 2016. *Id.* at 675-76. Dr. Tennant also noted Plaintiff had pain while lifting and sitting, and that she experienced headaches and trouble sleeping. *Id.* at 679. Claimant also reported an increase in pain with prolonged sitting, and a positive Kemp's test indicating a disk protrusion or prolapse. *Id.* at 695. These statements are consistent with Dr. Barakat's opinion regarding Plaintiff's fatigue and restrictions for sitting and lifting.

As discussed in Step One, the ALJ also impermissibly cherry-picked evidence with regards to whether Dr. Barakat's opinion was supported by his own treatment notes. This is not only an error at Step One, but also when discussing the checklist of factors at Step Two.

In sum, the ALJ failed to evaluate, either implicitly or explicitly, *all* of the checklist factors, several of which favored Plaintiff. *See, e.g., Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011) (remanding: "Here, many of [the checklist factors] favor crediting Dr. Tate's assessment: Dr. Tate is a psychiatrist (not a psychologist), she saw [the plaintiff] on a monthly basis, and the

treatment relationship lasted for over a year. It is not apparent that the ALJ considered any of these factors."). This failure is a grounds for remand. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) ("Here, the ALJ's decision indicates that she considered opinion evidence in accordance with §§ 404.1527 and 416.927. However, the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence.").

In light of the above, the Court finds that a remand is warranted. Because this case will be remanded, and because the issue of the treating physician's opinion is fundamental, the Court finds it unnecessary to address the remaining arguments.

### III. CONCLUSION

For the reasons stated in this opinion, Plaintiff's motion for summary judgment [Dkt. 12] is granted, and the Commissioner's motion [17] is denied. The case is remanded for further consideration.

Dated: January 29, 2019      By: _____
Iain D. Johnston
United States Magistrate Judge